## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

MARIA CUNNINGHAM,

        *Plaintiff,*

v.

OFFICER H.M. RUFFIN, III,

        *Defendant.*

Civil Action No. 1:15-cv-1650

### Memorandum Opinion

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant Officer H.M. Ruffin, III. Dkt. No. 24. Plaintiff, Maria Cunningham alleges that she was subject to false arrest and excessive force in violation of rights conferred by the Fourth Amendment, and gross negligence under state law, when detained by the Defendant during a November 16, 2013 interaction with police. Defendant contends in the instant Motion that he did not violate Plaintiff's Fourth Amendment rights and in any case is entitled to qualified immunity with respect to constitutional claims and sovereign immunity with respect to state law claims. For the reasons discussed below, the Court GRANTS Defendant's Motion.

### I. Background

On the evening of November 16, 2013, Plaintiff was traveling in a car driven by her boyfriend, Dennis Ashton. Plaintiff and Ashton got into an argument and Plaintiff got out of the car and told Ashton that she would walk home—approximately three miles away. Plaintiff was taking medication at the time for anxiety and had recently had her dosage increased. After Plaintiff left the vehicle, Ashton went to the nearby Herndon, VA police station to ask the police

1

for assistance in getting Plaintiff home. Ashton spoke with Sergeant Claudio Saa who took down information about Plaintiff and the nature of the argument between Ashton and Plaintiff. He then instructed the dispatcher to air the incident on police radio. Defendant responded to the dispatch call and identified Plaintiff in a nearby parking lot. Officers Trent Ashman and Detective Jeffrey Lange also responded to the call and arrived at the scene contemporaneously, followed shortly after by Sergeant Saa and Ashton.

Defendant approached Plaintiff and the conversation between them was captured in part on Defendant's body microphone. Dkt. No. 25, Ex. 25A. The recording begins with Plaintiff, slurring her words, asking Defendant to turn off the emergency lights on the police cruiser. Defendant did so. Defendant then asked Plaintiff what was going on and she began to cry and told Plaintiff to "ask her son" and that "she had been in the hospital three times" because "he is very violent." Defendant asked Plaintiff to identify who was violent and she identified Ashton. She said that Ashton had pulled her hair that evening. She added that she could "put him [Ashton] in jail if she wanted to." Defendant asked Plaintiff where she lived and she responded "I thought everyone knows where I live in Herndon."

After speaking with Plaintiff, Defendant and the other officers identified Plaintiff as the individual investigated for multiple hit-and-run incidents on September 25, 2013. Plaintiff was arrested on the hit-and-runs in September 2013, jailed until November 1, 2013, and pleaded guilty to driving under the influence on November 15, 2013, the day before the altercation at issue in this case. While the parties dispute the precise amount of alcohol that Plaintiff was consuming prior to her arrest for the hit-and-runs, Plaintiff previously testified to drinking a bottle of wine two or three times a week leading up to her hit-and-run incident. The police report from that arrest also identified a previous DUI conviction in 2009.

2

The body microphone recording continues for another two minutes but the microphone picks up no further sound. During the recorded portion of the conversation, Plaintiff answered all of the questions asked by Defendant but on numerous occasions appeared to be slurring her words, crying and stuttering in her answers. There is no evidence that a field sobriety test was conducted on Plaintiff at this time, but Defendant and the other officers at the scene attested to smelling alcohol on Plaintiff's breath. Ashton and Plaintiff deny that she had consumed alcohol that day.

Following the events captured on the body microphone, Defendant attempted to contact Plaintiff's son, Christopher Cunningham, whose contact information was in the police department database as a result of the investigation following the hit-and-run incident. A voicemail was left with Mr. Cunningham in which Defendant identified himself, explained that Plaintiff was highly intoxicated, and that he was hoping to not arrest her but would have to do so if he did not get a response because Plaintiff refused to go with Ashton. The officers did not receive a response from Mr. Cunningham and ultimately arrested Plaintiff for being intoxicated in public, a violation of Herndon Virginia Code of Ordinances Sec. 46-16. Defendant handcuffed Plaintiff and the parties disagree as to whether Plaintiff resisted or submitted to the detention and whether she informed the officers that she had undergone surgery for torn rotator cuffs in both shoulders in 2013. The parties agree that Plaintiff was cuffed with her hands behind her back pursuant to Herndon police policy. She was subsequently placed in the police cruiser, driven to the Fairfax County Adult Detention Center and presented before a magistrate who issued warrants for both public intoxication and for disorderly conduct. Defendant then called Mr. Cunningham and left him a second voicemail advising him of Plaintiff's detention, that he had contacted the Woodburn Mental Health facility because he believed that Plaintiff needed

3

mental health assistance and that Defendant would be released at 5:30 AM the next morning. Plaintiff was released at 5:30 AM and took a cab home from the detention center. There is no record of a sobriety test (blood, breath or otherwise) during Plaintiff's detention.

Defendant presented evidence of Plaintiff's conduct during the time after Plaintiff was placed in the cruiser until she departed the detention center the next morning. Plaintiff objects to these facts as "prejudicial and not probative" but does not challenge the veracity of the claims. Defendant avers that Plaintiff resisted placement in the police cruiser. After being placed in the cruiser, Plaintiff continued to scream and swear while slurring her words as captured by the audio recording equipment in the police cruiser. Dkt. No. 25, Exh. 25B. Plaintiff complained that Ashton had a firearm at the home that he would hide. She threatened to take her own life. For much of the audio recording the content of the recording is indiscernible because Plaintiff is shouting swear words at the officers and sobbing. Upon arrival at the detention center, Plaintiff resisted removal from the cruiser and spat and kicked at the assisting officers—necessitating the use of a "spit net" over her face and a hobble tie around her feet. At one point before appearing in front of the magistrate, Plaintiff began hopping up and down and saying "I am so drunk….drunk, drunk, drunk." Plaintiff continued to resist the efforts of the officers to transport her from the appearance before the magistrate to an overnight holding cell.

Plaintiff ultimately pleaded no contest to the charges arising out of the November 16, 2013 incident, accepted an amended charge of trespassing, and her public intoxication charge was nolle prossed. Her matter was continued for one year conditioned on good behavior and was dismissed in May 2015 on the one year date.

Plaintiff filed her complaint in late 2015 alleging that there was no probable cause for her arrest and that excessive force was employed in the arrest, each act in violation of the Fourth

Amendment and gross negligence under state law. Defendant removed the action to this Court on December 14, 2015. The parties have conducted discovery and completed their final pre-trial conference and this Motion was fully briefed by the parties.

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Finally, in making a summary judgment determination, the Court must bear in mind that "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Discussion

Defendant moves for Summary Judgment arguing that he had probable cause to arrest Plaintiff and did not use excessive force in executing that arrest. Furthermore Defendant argues that he is entitled to qualified immunity with respect to the Fourth Amendment claims and sovereign immunity with respect to the state law claims. For the reasons that follow, the Court

finds that Defendant did have probable cause to effect the arrest, did not use excessive force and is entitled to qualified immunity.

## A. False Arrest

Plaintiff argues that Defendant lacked probable cause to arrest her for public intoxication and disorderly conduct. The record shows that Defendant only arrested Plaintiff for public intoxication and this memorandum opinion focuses on that charge. The magistrate subsequently issued warrants for public intoxication and disorderly conduct.

If an officer effects an arrest in the absence of probable cause, he violates the arrestee's Fourth Amendment right to be free from unreasonable seizure. *United States v. Watson*, 423 U.S. 411, 417 (1976). Probable cause exists when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). In making its determination of whether probable cause exists in a given case, the Court must consider only those "facts and circumstances known [to the officer] at the time of the arrest." *Smith v. Tolley*, 960 F. Supp. 977, 994 (E.D. Va. 1997).

Herndon Virginia Code of Ordinances Sec. 46-16 sets out the following conduct as prohibited "public intoxication":

> If any person profanely curses or swears or is intoxicated in public, whether such intoxication results from alcohol, narcotic drug or other intoxicant or drug of whatever nature, he shall be deemed guilty of a class 4 misdemeanor. In any area in which there is located a court-approved detoxication center, a law enforcement officer may authorize the transportation, by police or otherwise, of public inebriates to such detoxification center in lieu of arrest; however, no person shall be involuntarily detained in such center.

Under Virginia law, "intoxication" means "a condition in which a person has [consumed enough of an intoxicant] to observably affect his manner, disposition, speech, muscular

6

movement, general appearance or behavior." *McGhee v. Commonwealth*, 701 S.E.2d 58, 60 (Va. 2010) (quoting Va. Code Ann. § 4.1–100).

Defendant contends that the documentation of Plaintiff's conduct at the scene, the audio recording of Defendant's encounter with Plaintiff prior to the arrest, observations of officers at the scene and Ashton's pursuit of police intervention in the first place all support a finding of probable cause. Plaintiff counters that prior to the arrest Plaintiff was not cursing or swearing and that Defendant disregarded Plaintiff's mental health condition. Furthermore, Plaintiff argues that her conduct after arrest is not relevant to whether probable cause existed for the arrest because the handcuffing aggravated her surgically repaired shoulders and induced a panic attack.

To prove that no probable cause existed for arrest, Plaintiff must demonstrate that no reasonable officer could conclude that Plaintiff was publicly intoxicated. Plaintiff's contention that her conduct was not indicative of intoxication is not supported by the undisputed audio recording prior to arrest. During the colloquy with officers in the parking lot, Plaintiff can be heard crying, slurring and halting in her speech. All three officers reporting to the scene aver that they smelled alcohol on her breath. Plaintiff is correct that at least Shaa was on notice that Plaintiff suffers from anxiety attacks and was taking an increased dosage of medication to treat this condition. It is unclear whether Shaa communicated that information to Defendant. In any case, the fact that Plaintiff's condition of intoxication could have been caused by her medication, alcohol or some combination of the two only further supports Defendant's probable cause to arrest. Probable cause under the Herndon public intoxication statute exists whether the cause of the intoxication is alcohol or medication.

On the basis of the audio recording and sworn statements of the officers, Defendant had a reasonable basis for effecting an arrest of Plaintiff for public intoxication. Courts have routinely

7

found that evidence of slurred and halting speech and erratic behavior during an encounter with police affords probable cause for a public intoxication arrest. *See e.g., Watson v. Spilman,* No. 3:13CV746, 2014 WL 3867550, at *5 (E.D. Va. Aug. 5, 2014) (concluding probable cause to arrest for public intoxication where plaintiff's answers to questions were unusually delayed and he was exhibiting indicia of impairment and erratic behavior during conversation with officers); *McGhee,* 280 S.E.2d at 60 (concluding probable cause to arrest for public intoxication existed where officer observed defendant had strong odor of alcohol on breath, bloodshot eyes, and slurred speech); *Clarke v. Commonwealth,* 527 S.E.2d 484, 489 (Va. App. 2000) (concluding probable cause to arrest for public intoxication where officer detected odor of alcohol, observed blood shot eyes, and noted erratic speech).

Plaintiff's conduct in the police cruiser and at the detention center, even if not probative of probable cause for the initial arrest, did provide probable cause for the magistrate to issue warrants for public intoxication and disorderly conduct. *See Watson,* 2014 WL 3867550, at *4 (observing that magistrate found probable cause for threat to burn public property based on plaintiff's conduct and statements while at the detention center).

Plaintiff's behavior at the time of arrest including her slurring of speech, crying and shouting would suggest to a reasonable person that she was intoxicated either because of her medication or alcohol. Therefore, Defendant had probable cause to arrest.

### B. Excessive Force

Plaintiff also contends that Defendant used excessive force in effecting the arrest for public intoxication because he handcuffed her with her hands behind her back, thereby aggravating her rotator cuff injuries.

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). The question is whether a reasonable officer would have determined that the degree of force used was justified by the threat presented, an objective inquiry "'requir[ing] careful attention to the facts and circumstances in each particular case,'" including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Smith v. Murphy*, 634 F. App'x 914, 916 (4th Cir. 2015) (quotations omitted).

Plaintiff argues that Defendant's decision to handcuff Plaintiff behind her back constituted excessive force. Plaintiff analogizes behind-the-back cuffing to instances where handcuffs are tightened so much that they cause damage to the arrested individuals hands and arms. Even if this analogy is appropriate, only two Circuit Courts of Appeals (the Third and Sixth) have recognized that excessively tight or forceful handcuffing constitutes excessive force. *See Deavers v. Vasquez*, 57 F. Supp. 3d 599, 607 (E.D. Va. 2014). In *Deavers*, a court in this district declined to follow the Third and Sixth Circuit positions and observed that the Fourth Circuit case law has not identified that conduct as excessive. *Id.* at 607-608.

Even if the cuffing was excessive, Plaintiff has failed to show that she suffered an injury as a result of the conduct. Plaintiff alleges that she yelled when she was lifted up by her shoulders after being handcuffed and that Defendant's actions destroyed the surgical repairs, causing the recurrence of the rotator cuff injuries. But this is not sufficient evidence of injury. *Deavers*, and the cases it cites, share the holding that a lack of evidence of significant physical harm undermines a claim for excessive force based on the manner of cuffing. *See Id.* at 608 ("[Plaintiff] alleges no significant physical harm from the incident, and the only evidence of any

9

injury are four unauthenticated photographs purportedly portraying Plaintiff's superficial bruises."); *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998) ("there is no evidence that Officer Brissett sustained any major physical injury...we agree with the district court the minimal amount of force used to effectuate the arrest was reasonable."); *Cooper v. City of Virginia Beach*, 817 F.Supp. 1310 (E.D.Va.1993), aff'd, 21 F.3d 421 (4th Cir.1994) (finding the excessive force claim deficient because the plaintiff failed to offer sufficient evidence of actual injury). Because Plaintiff has not offered any evidence of injury, the Court finds that the use of force was not excessive.

In addition, while Plaintiff avers that she warned the officers of her previous shoulder surgery and asked to be cuffed in the front, she did not subsequently complain to the officers that the backwards cuffing was causing her harm. *See Deavers*, 57 F. Supp. 3d at 608 ("Moreover, Plaintiff fails to offer evidence that Deputy Vasquez was aware that the handcuffs he placed on Deavers were excessively tight or hurtful."). On the contrary, Plaintiff became increasingly violent and erratic as she was transported to the detention center and presented to the magistrate. Her resistance necessitated increasingly restrictive forms of control including a spit net and hobble tie. If Defendant's act of handcuffing Plaintiff behind her back and lifting her up by way of her shoulders was excessive, Plaintiff's conduct following her initial arrest provided no indication to the officers that she had suffered an injury. In fact, Plaintiff's subsequent conduct necessitated the use of additional force to restrain her. Plaintiff's violent use of her legs and spitting during her detention suggests that she would have also used her arms to resist the officers had she not been cuffed in the back.

Because this Circuit does not recognize a *per se* excessive force claim based on the manner of handcuffing, Defendant followed standard and necessary safety procedures by

handcuffing Plaintiff behind the back and there is no evidence that Defendant knew or should have known of Plaintiff's prior surgeries either before or after the arrest, the Court finds that Defendant's force was reasonable and not excessive.

### C. Qualified Immunity

Defendant contends that even if he violated Plaintiff's rights by effecting the arrest without probable cause or using excessive force, the claims should still be denied because Defendant is entitled to qualified immunity.

Qualified immunity is immunity from suit rather than merely a defense to liability. *Pearson v. Callahan*, 555 U.S. 223 (2009). "[Q]ualified immunity shields government officials performing discretionary functions from civil liability insofar as their conduct 'does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known.'" *Johnson v. Garraghty*, 57 F. Supp. 321, 329 (E.D. Va. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982)).

In determining whether or not to apply qualified immunity in a §1983 suit, courts look to the two-prong test set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). Under *Saucier*, the court must decide (1) whether facts alleged or shown by Plaintiff make out a violation of the constitutional right; and, (2) if so, whether that right was clearly established at the time of defendant's alleged misconduct. [1] *Id.* Under the first prong, if the answer is, "no, the officer's conduct did not violate the person's Constitutional rights," then the inquiry ends and qualified immunity bars the litigation from proceeding. When the first prong is satisfied, then the inquiry turns to the second prong. Under the second prong of *Saucier*, the "relevant, dispositive inquiry

---

[1] Trial courts have the discretion to take the two prongs in whatever order is best suited for the inquiry at hand. *Pearson*, 555 U.S. at 233.

11

in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Under *Saucier*, the Court must determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a Constitutional right. *Id.* at 201. The inquiry involves an objectively reasonable test and is judged from the perspective of a reasonable officer on the scene. *See Kentucky v. Kind* 131 S.Ct. 1849, 1859 (2011); *Graham v. Connor*, 490 U.S. 386 (1989). Ultimately, the legal issue is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliot v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 397). Put differently, a "police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). The Court's inquiry is fact-specific and must be analyzed on a case-by-case basis.

As discussed above, Plaintiff has not set out a claim for false arrest or excessive force in violation of the Fourth Amendment. Because the facts and pleadings do not adequately support Plaintiff's Fourth Amendment claims the first prong of the *Saucier* test is not met and Defendant is entitled to qualified immunity.

Even if the facts and pleadings established that the conduct constituted a Fourth Amendment violation, Defendant would still be entitled to qualified immunity under the second prong of the *Saucier* framework. Defendant took a number of steps to assist Plaintiff without resorting to arrest. Defendant calmly interviewed Plaintiff to find out if she was injured, he contacted Plaintiff's son to aid her mother in lieu of detention and he conferred with the other

officers at the scene to determine the best course of action based on her history of criminal conduct and relationship to Ashton. Considering the fact that Plaintiff was in her present state because she fled Ashton, it is understandable that Defendant was disinclined to release Plaintiff to his custody. Because the son did not reply, Defendant was also unable to release Plaintiff to him. Finally, as captured in the audio from the scene of the incident, Plaintiff was not in any condition to travel the three miles from her location to her home—and in any case Ashton might have also been there upon her return. Therefore, Defendant's decision to detain Plaintiff was reasonable under the circumstances.

Defendant's use of force was similarly reasonable. The parties do not dispute that Herndon police policy requires cuffing behind the back for public and officer safety reasons. Other than complying with the policy and then lifting Plaintiff up by way of her shoulders, Plaintiff has not alleged any excessive force in the arrest process. In determining whether excessive force existed the Court must balance the force applied against the "immediate threat to safety" for the officers and the public. *See Jones v. Buchanan*, 325 F.3d 520, 528 (4th Cir. 2003). Here, de minimis force, only that which was required by police policy, was used to effect the arrest. The parties disagree whether Plaintiff resisted arrest and whether her conduct was a threat to the officers and the public but her conduct immediately after the arrest, as captured on the audio recording and reflected in the affidavits of the officers was erratic and violent. For these reasons, a reasonable officer would have employed the same procedures, consistent with police policy, to detain Plaintiff.

### D. Sovereign Immunity with Respect to State-Law Claims

Defendant also contends that Plaintiff's "state law claim of gross negligence" is not viable because Defendant is entitled to sovereign immunity against state law claims.

Sovereign immunity bars a state official's liability for negligence when the supposedly violative acts involve important government functions and the exercise of judgment and discretion. *Harrison v. Prince William Cty. Police Dep't*, 640 F. Supp. 2d 688, 712 (E.D. Va. 2009) (quoting Messina v. Burden, 228 Va. 301, 321 S.E.2d 657, 660–61 (1984)). However, sovereign immunity does not bar a suit for gross negligence. *See Glasco v. Ballard*, 249 Va. 61, 65 (1995) ("[U]nless Ballard's conduct amounted to gross negligence, he is immune from suit.")

Under Virginia law, "gross negligence" refers to the "degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another." *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987). "Gross negligence amounts to the absence of slight diligence, or the want of even scant care." *Id.* The negligence must rise to such a level that it "would shock fair minded men although something less than willful recklessness." *Ferguson v. Ferguson*, 212 Va. 86, 92 (1971).

Defendant is not entitled to sovereign immunity with respect to the gross negligence claim. *See Glasco*, 249 Va. at 65. However, for the reasons discussed above, the evidence in the record does not show that Defendant acted with gross negligence towards Plaintiff. Therefore, summary judgment is also appropriate with respect to the state law claim.

### IV. Conclusion

For the reasons discussed above, the Court GRANTS Defendant's Motion for Summary Judgment.

October 26, 2016
Alexandria, VA

_____
/s/
Liam O'Grady
United States District Judge

14